**FILED**

**09/18/2023**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTHERN INDIANA

Nicholas J. Genovese
Petitioner

v.                                    CASE NO.   2:23-cv-00455-JPH-MKK

Warden FCI Terre Haute
Respondent

---

MOTION FOR HABEAS CORPUS PER U.S.C.2241

Nicholas J. Genovese, Pro Se, an Inmate with the Federal Bureau of Prisons (BOP) at the Terre Haute Federal Prison Camp in Terre Haute, IN., submits this motion for Habeas Corpus per 28 U.S.C. 2241 requesting that the Court order the BOP to: Recalculate the amount of FTC's earned starting from the date Petitioner was sentenced Fed. 11, 2020 and to Restore the 272 Program Days (90 Accrued Days @ 10 days per 30 days) that were denied to me by the BOP.

Petitioner states the following;

1) Petitioner's Projected Release Date (PRD) is Jan 12, 2026.

2) Petitioner is serving a 140 month sentence in Case No. 18-CR-183 in the District Court for the Southern District of New York (SDNY).

3) Petitioner has earned a substantial amount of "First Step Act Time Credits" (FTC's) (18 U.S.C. 3624(a)(4)) through "Successful completion of Evidence Based Recidivism Programs and Productive Activities." Petitioner calculates that he has earned over 1 years worth of FTC's.

4) The Federal Bureau of Prisons began applying these FTC's in a "limited way" BOP wide on January 19th, 2022.

5) FTC's can be applied towards Pre-Release Custody or Supervised Release per 18 U.S.C. 3624(g).

6) The Petitioner qualifies to apply his FTC's towards earlier transfer to Supervised Release.

7) Petitioner has never been in "Opt-Out" Status in programming.

8) Petitioner was sentenced and placed in BOP custody Feb 11, 2020 and should have been earning FTC's starting on that date, NOT the November 16, 2020 date the BOP contends as the start date.

9) Petitioner is eligible and has been denied 272 Program Days earned at the 10 days per 30 days served would equal 90 days earned.

10) Petitioner even was programming during that period (Exhibits of Certificates & Education Transcript attached).

11) Petitioner was deemed a Low Pattern score by the BOP.



The BOP has promulgated regulations for executing and administering time credits under the FSA. See 28 C.F.R. 523.40(a). The stated purpose of those regulations "is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632 (d) (4)." Id. The regulation that Mr. Genovese challenges here, 28 C.F.R. 523.42 (a), concerns the date upon which a prisoner can begin to earn FSA time credits. That regulation states:

> An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date after the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

28 C.F.R. 523.42 (a).

Title 18 U.S.C. 3585(a) clearly establishes that a sentence of imprisonment commences on the date the defendant is received into custody awaiting transportation to the official detention facility at which the sentence is to be served. NOT on the date he arrives at the facility. Furthermore, 3632(d)(4)(B)(ii) states that a prisoner may not earn FSA credit under this paragraph during official detention prior to the date that the prisoners sentence commences under 3585(a).

The right calculation of credit Petitioner has earned from his date of sentencing on 2/11/20 to 11/16/20 is 90 days (272 Program days at 10 days per 30). Respondent has acted maliciously and in Bad Faith to deny petitioner the 90 days FTC's he has earned.

Petitioner is being prejudiced by the BOP's failure to timely calculate and apply his First Step Act (FSA) Earned Time Credits (ETC). This deliberate, malicious act of Bad Faith deprives Petitioner of the benefit which Congress intended he be able to receive under the FSA as set forth in 18 U.S.C. 3632(d)(4).

The facts of this case have already been adjudicated in Komando v. FCI Berlin Warden, 22-CV-425-SE, 01/18/2023 and Hachem v. Warden of FCI Berlin 22-CV-233-LM 01/18/2023. In both cases the Federal Bureau of Prisons (FBOP) maliciously misread the First Step Act of 2018 and the applicability of FSA FTC's and maliciously used the date Komando arrived at FCI Berlin, instead of using the date he was sentenced (June 9, 2021) as the start date of earning FTC's.

April 23, 2023 Judge Elliott approved and Granted Mr. Komando's petition. The BOP was ordered to recalculate Mr. Komando's FSA FTC's to include his eligibility from the date he was sentenced June 9, 2021.

## FACTUAL BACKROUND

On January 29th, 2018 Petitioner was arrested and then detained pending resolution of this case in the SDNY at MCC Manhattan and then MDC Brooklyn to answer a complaint of 1 count of wire fraud and 1 count of securities fraud, 18-CR-183. He plead guilty accepted a plea agreement on October 22, 2018, and on February 11, 2020 was sentenced to 140 months in prison (top end of the range) to be followed by 3 years of Supervised Release. He was ultimately transferred to FCI Cumberland Prison Camp on November 16, 2020.

During his entire period of incarceration Petitioner has never refused to participate in any program or FSA Risk assessment, attempted to access programming, and maintained a Low Risk Pattern Score.

The BOP is taking the position that Petitioner is not entitled to ETC's until he arrived at a designated BOP facility on 11/16/20, despite having been in and under the custody and control of the Federal Government since he was detained upon his arrest 1/29/2018. Petitioner asserts that he became eligible for ETC accrual when he was sentenced on Feb 11, 2020.

## ADMINISTRATIVE REMEDYS EXHAUSTED

Petitioner has completely followed the BOP policy by filing all of his available Administrative Remedies. He filed a BP8, BP9, BP10 and a BP11 with Corporation Counsel. The BOP maliciously and in Bad Faith denied all of those filed remedies. He now files this motion for Habeas relief.

(Pg2)

CONGRESS'S INTENT IS CLEAR THAT EARNED TIME CREDITS SHOULD BE AWARDED TO
ELIGIBLE INMATES FROM THE TIME OF SENTENCING FOR A DETAINED DEFENDANT, CONTRARY TO THE
BUREAU OF PRISONS REGULATION

The issue before the court is whether the BOP's denial of ETC's for the nine (9) months after his sentencing while he was awaiting transfer to his designated facility is improper and violates the mandates of both the FSA and 18 U.S.C. 3585. The language of the FSA makes it clear that Congress intended for ETC's to be available from the date a detained defendant's sentence is imposed.

The FSA was signed into law on December 21,2018. One of its goals included incentivizing and rewarding participation and completion of recidivism reduction programs and productive activities. As the BOP described the FSA, it was "the culmination of a bi-partisan effort to improve criminal justice outcomes, as well as to reduce the size of the federal prison population while also creating mechanisms to maintain public safety", Federal Bureau of Prisons, " An Overview of the First Step Act," http:www.bop.gov/inmates/fsa/overview.jsp.

Under the FSA, an eligible prisoner who is "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating" may earn 10 days of ETC's, or in some cases, 15 days of ETC's, for every 30 days of successful program participation. 18 U.S.C. 3632(d)(4)(A), (B), (D). Time credits under the FSA "shall be applied toward time in prerelease custody or supervised release" and the BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release".

18 U.S.C. 3632(b)(4)(B)(ii) provides that a prisoner may not earn time credits under this paragraph for an evidence based recidivism reduction program that the prisoner successfully completed "during official detention prior to the date that a prisoner's sentence commences under section 3585(a)." The only logical reading of this language is that once the sentence commences, he may earn time credits.

This reference back to 18 U.S.C. 3585(a) makes it clear that prisoners are to awarded ETC's from the date of the commencement of their sentence as defined therein. 18 U.S.C. 3585(a) states that "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which his sentence is to be served." Once he was sentenced on February 11, 2020, Mr. Genovese was awaiting transportation to the facility where his sentence was to be served.

The BOP has adopted regulations that contravene the intent of Congress and conflict with the above-cited statutory language. The BOP ignores the statutory definition of when a sentence and eligibility for ETC's commence. The BOP's regulation which governs FSA ETC's is found at 28 CFR 523.42(a). It provides that an inmate is eligible to earn ETC's "after the inmate's term of imprisonment commences" which it defines as "the date that the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served". In adopting this regulation, the BOP ignored the statutory directive defining when a sentence "commences" which has a profound impact on when ETC's begin accumulating for Mr. Genovese.

This Court should not defer to the BOP's interpretation as to when ETC eligibility begins. When read together, 18 U.S.C. 3585 (a) and 18 U.S.C. 3632(b)(4)(B)(ii) make it clear that ETC's begin to accrue at the time of sentencing for an inmate who is not given the privilege of self-surrendering. It is noteworthy that inmates who are not detained and are permitted to self-report do not suffer such a denial of the opportunity to accrue ETC's because they are immediately eligible for ETC's under the BOP's regulations.

The starting point for statutory construction is that "words generally should be 'interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute.'" Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018) (quoting Perrin v. U.S., 444 U.S. 37, 42 (1979)). Courts must also bear in mind the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 320 (2014) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). "When the words of a statute are unambiguous ... judicial inquiry is complete." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992) (quotation omitted). Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always "give effect to the unambiguously expressed intent of Congress." Util. Air Regulatory Grp., 573 U.S. at 326 (quoting National Assn. of Homebuilders v. Defenders of Wildlife, 551 U.S. 644, 665 (2007) (quoting Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, (1984)).

CHEVRON ANALYSIS

In considering Mr. Genovese's challenge to 28 C.F.R. 523.42 (a) as that regulation has been applied to him, and the BOP's determination of the date when he first was able to earn FSA Time Credits -- should decide the matter by applying the two-step test set forth in Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). See generally Laparra v. Garland, 52 F. 4th 514, 519 (1st Cir 2022). "Under step one, we must determine whether Congress spoke clearly to the precise question before us. If so, that is 'the end of the matter.' If not, then we move to step two, where we defer to the [federal agency]'s interpretation of the statutory provision if it is reasonable." Id. (quoting and citing Chevron, 467 U.S. at 842-43).

Under Chevron, this court must first examine whether the plain language of the FSA establishes the date upon which a prisoner may start to earn FSA Time Credits. And only if the court finds that the statute does not address that question will the court go on to consider the substance of the regulation itself.

The pertinent provisions of the FSA concerning when time credits can -- and cannot -- be earned state the following:

(4) Time credits.-

  (A)  In general. -- A prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

    (i)  A prisoner shall earn 10 days of time credits for every 30 days of successful participation or productive activities.

    (ii)  A prisoner determined by the [BOP] to be at a minimum or a low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits . . . .

  (B)  Availability. -- A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed -

    (i)  prior to the date of the enactment of [the FSA] ; or

    (ii)  during the official detention prior to the date that the prisoner's sentence commences under section 3585 (a).



18 U.S.C. 3632 (d) (4) A-(B) (emphasis added). Construed together, those provisions make it clear that prisoners "shall" earn time credits, at the statutory rate, for all qualified programs in which they successfully participate, except for the programs in which they participated while imprisoned either before the FSA was enacted, or in detention before the date when their "sentence commence [d] under 3585 (a)."

Section 3632 (d) (4) (B) (ii) points to 18 U.S.C. 3585 (a) to provide a definition of when a "sentence commences," for purposes of defining when the prisoner's post-enactment completion of a program would would not entitle him or her to FSA time credits. Section 3585 (a) -- and 3632 (d) (4) (B) by its reference to that statute - specifies "the date the defendant is received in custody awaiting transport to "his initial BOP-designated facility as the date his or her "sentence to a term of

imprisonment commences" for the purposes of determining whether he can begin to earn FSA time credits. For Mr. Genovese, the parties are in agreement that under 3585(a), February 11, 2020 is the date his "sentence to a term of imprisonment commence[d]."

Section 523.42(a) does not mirror the language in the FSA defining when a prisoner can begin earning FSA time credits. Rather, that regulation specifies a different date as the date when a prisoner can begin to earn FSA time credits, namely, the date the prisoner ultimately arrives at his BOP-designated facility where his sentence will be served. See 28 C.F.R. 523.42(a). When that regulation is applied to Mr. Genovese, November 16, 2020 is the earliest date he could earn time credits despite the fact that his "sentence to a term of imprisonment commence[d] on February 11, 2020.

The Court's Chevron inquiry starts, and ends, at step one in this case because the plain language of the FSA, and of 3585 (a), clearly establishes that date upon which the FSA must allow prisoners to start earning FSA time credits. There is no ambiguity in any of the terms of 3632 (d) (4) (A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA. There is also no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits. The Court, therefore, must give effect to the statutory text. See Laparra-DeLeon, 52 F.4th at 519; see also Chevron, 467 U.S. at 842-43.

Here, the date established by the plain language of the FSA upon which Mr. Genovese was entitled to begin earning FSA time credits is February 11, 2020. The regulation's definition of a different date is contrary to the express language of the FSA. The respondent's interpretation of Mr. Genovese's eligibility for earning time credits under FSA, as expressed in 28 C.F.R. 523.42 (a), is not entitled to deference under Chevron, as it contravenes the plain language of the FSA, 18 U.S.C. 3632 (d) (4) (B) (ii).

Therefore, the Court must find that 28 C.F.R. 523.42 (a) cannot be applied to prevent Mr. Genovese from earning time credits to which he is entitled under the plain language of the FSA. Mr. Genovese is allowed to earn FSA time credits beginning on February 11, 2020. Accordingly, the Court should grant the petition, find that the regulation does not survive the Court's Chevron analysis, and direct the respondent to recalculate Mr. Genovese's time credits.

This is not a case where there is ambiguity or silence on when Congress intended an inmate to be eligible for ETC's. Because the statutes are clear and unambiguous that the FSA ETC eligibility begins once a detained defendant is sentenced, this is the end of the inquiry under Chevron.

The BOP regulation that prevents Mr. Genovese from being eligible for ETC's from the time that he began to serve his sentence contravenes the goals of the FSA and ignores the clear intent of Congress. The Court should order the BOP to recalculate Mr. Genovese's sentence to award him ETC's from the date of his sentencing Feb. 11, 2020.

I am requesting that the Court order the BOP to immediately credit Petitioner the 272 Program days at the rate of 10 days per 30 (per the FSA), effective from Petitioner's date of sentencing Feb. 11, 2020 they Nov. 16, 2020 when he arrived at FPC Cumberland that were denied to him.


### DECLARATION UNDER PENALTY OF PERJURY

I decalre under penalty of perjury that I am the Petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

_____          9/5/2023
Signature of Petitioner                        Dated


(p95)

EXHIBITS INDEX

GENOVESE v. WARDEN TERRE HAUTE

EXHIBIT A

COMPLETED ADMINISTRATIVE REMEDIES & BOP RESPONSE.
BP8, BP 9, BP10, BP 11.

EXHIBIT B

FTC CALCULATION SHEET: ISSUED BY TERRE HAUTE
SHOWING THE INCORRECT FSA START DATE OF    11-16-2020

EXHIBIT C

PROGRAM REVIEW MEETING/TEAM MEETING:  FROM TERRE HAUTE CAMP
SHOWING THAT I PROGRAMMED CLASSES AFTER SENTENCING DATE OF   2-11-2020.

-EAT SMART            8-10-20
-ANIMAL ANATOMY       7-31-20
-MONEY SMART          2-18-20

EXHIBIT D

SENTENCE COMPUTATION DATA SHEET:  FROM TERRE HAUTE CAMP
SHOWING THE INCORRECT COMMITTMENT DATE OF 11-16-2020

EXHIBIT E

FIRST STEP ACT OF 2018 STATUTE
18 U.S.C. 3632 (d) (4)